IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

JESUS CORTEZ RIVERA, *et al.*,

    *Plaintiffs*,

    v.

ALTEC, INC., *et al.*,

    *Defendants*.

Civil Action No. ELH-21-0681

**MEMORANDUM OPINION**

In this personal injury case, plaintiffs Jesus Cortez Rivera and his wife, Viridiana Reyes, residents of West Virginia, filed suit in the Circuit Court for Frederick County, Maryland against Navistar, Inc. ("Navistar"); Altec, Inc. and Altec Industries, Inc. (collectively, "Altec"); All Reliable Services, Inc. ("All Reliable"); and All Railroad Services Corp. ("All Railroad"). ECF 2 ("Complaint").[1]  According to plaintiffs, they filed suit in Maryland because Altec and its subsidiaries reside in Maryland and all defendants conduct substantial business in Maryland. ECF 22 at 4.  Defendants removed the case to this Court on March 18, 2021, on the basis of diversity jurisdiction, pursuant to 28 U.S.C. §§ 1332 and 1441. ECF 1 ("Notice of Removal").[2]

In particular, plaintiffs assert product liability and negligence claims against defendants arising out of a serious workplace accident that occurred in West Virginia on July 15, 2019. ECF 2, ¶¶ 111-126. They claim that on that date Mr. Rivera, an experienced employee of All Reliable, was operating a bucket truck to clear vegetation and trim trees from utility power lines and poles.

---

[1] According to plaintiffs, Altec, Inc. "is the parent or subsidiary of, does business as, or is also known as" Altec Industries, Inc. ECF 2, ¶ 7.

[2] Plaintiffs named a host of other entities in their Complaint, including Navistar International Corporation, Navistar's parent.  ECF 1 at 1 n.1.  But, these entities were dismissed by plaintiffs, without prejudice, prior to removal of this case to federal court.  *Id.*; *see* ECF 1-2.

*Id.* ¶¶ 111, 112, 117. While Mr. Rivera was in the truck, it tipped over, without warning. *Id.* ¶ 124. As a result, Mr. Rivera fell approximately 50 feet to the ground and sustained severe injuries. *Id.* ¶¶ 124, 125, 126. Defendants were allegedly involved in the design, manufacture, assembly, sale, and repair of the truck. *Id.* ¶¶ 100-110.

The Complaint contains nine counts. Counts One through Eight are asserted by Mr. Rivera alone, and Count Nine is asserted by both plaintiffs. The claims are as follows: "Negligence (Hydraulic Operations Switch)" against all defendants (Count One); "Products Liability (Hydraulics Operations Switch)" against all defendants (Count Two); "Negligence (Outrigger, Weight, and Balance)" against Altec and Navistar (Count Three); "Negligence against All Reliable and All Railroad (Assignment of Subject Truck to Plaintiff)" (Count Four); "Intentional or Grossly Reckless Assignment of Subject Truck to Plaintiff" against All Reliable and All Railroad (Count Five); "Strict Products Liability (Outrigger, Weight, and Balance)" against all defendants (Count Six); "Strict Products Liability" against All Reliable and All Railroad (Count Seven); "Negligent Repair" against Altec, All Reliable, and All Railroad (Count Eight); and "Loss of Consortium Against All Defendants" (Count Nine).

Altec answered the suit. ECF 4. But, All Reliable and All Railroad filed a motion to dismiss, pursuant to Fed. R. Civ. P. 12(b)(6) or, in the alternative, for summary judgment, pursuant to Fed. R. Civ. P. 56. ECF 8. Navistar moved to dismiss the Complaint, claiming lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2). ECF 9. The motion is supported by a memorandum (ECF 9-3) (collectively, the "Navistar Motion") and three exhibits. ECF 9-4 to ECF 9-6. Plaintiffs oppose the Navistar Motion. ECF 22 ("Opposition"). Navistar has replied. ECF 29 ("Reply").

Plaintiffs also seek leave to file a surreply to the Navistar Motion. ECF 30 ("Surreply Motion"). The request is accompanied by the proposed surreply (ECF 30-1) and two exhibits. ECF 30-2; ECF 30-3.

By letter of June 15, 2021, plaintiffs' counsel requested an "expedited decision" regarding the Navistar Motion. ECF 33. According to counsel, if the Court declines to exercise personal jurisdiction over Navistar, plaintiffs must file suit in West Virginia, where the accident occurred. *Id.* at 1-2. And, under West Virginia law, plaintiffs must do so by July 15, 2021. *Id.* at 2. But, this would require plaintiffs to retain another lawyer and would lead to additional expenses for them. Therefore, plaintiffs' counsel asks for a prompt ruling on the Navistar Motion, with the hope that it will not be necessary for them to file suit in West Virginia. *Id.*

Accordingly, to accommodate plaintiffs' request, this Memorandum Opinion resolves only the Navistar Motion and the related Surreply Motion. No hearing is necessary to resolve these motions. *See* Local Rule 105.6. For the reasons that follow, I shall deny the Surreply Motion and grant the Navistar Motion.

## I. Factual Summary[3]

As noted, plaintiffs are residents of West Virginia. ECF 2, ¶ 73. The accident occurred in that State. *Id.* ¶ 117.

All Reliable, which is incorporated in Nevada and has its principal place of business in Pennsylvania, provides a variety of services to states and utility companies, including utility line

---

[3] The facts are limited to those that are relevant to the Navistar Motion. As discussed, *infra*, in the posture of this case, I must assume the truth of the facts as alleged by plaintiffs. And, I may consider exhibits appended to the suit, without converting the Navistar Motion to one for summary judgment.

clearing. *Id.* ¶¶ 40, 55, 71.[4] Mr. Rivera was employed by All Reliable as "a bucket truck operator and tree cutter" when the accident occurred on July 15, 2019. *Id.* ¶¶ 73, 74, 111.

Navistar is a Delaware corporation with its headquarters and principal place of business in Lisle, Illinois. ECF 9-4 (Affidavit of Jamila S. Covington, Assistant Secretary of Navistar), ¶ 3. According to plaintiffs, Navistar sells or distributes "commercial trucks, and truck and engine service parts to customers throughout the state of Maryland and other states." ECF 2, ¶ 84. Navistar is registered to do business in Maryland and has a resident agent for service of process in Maryland. ECF 9-4, ¶ 4; ECF 2, ¶¶ 16, 17. Additionally, a number of independent dealerships sell Navistar products in Maryland. But, according to Covington, these dealerships "are not agents of Navistar, but rather are independently owned and operated businesses." ECF 9-4, ¶¶ 5, 6. Moreover, Navistar "does not repair or service vehicles in Maryland and any all [sic] such activities are conducted by either the independently owned and operated Navistar dealers or by third parties." *Id.* Nor does Navistar have any bank accounts or manufacturing plants in Maryland. *Id.* ¶¶ 8, 10.

Altec is an Alabama corporation with its principal place of business in Alabama. ECF 2, ¶ 1; ECF 1, ¶ 10. Altec manufactures, assembles, and customizes trucks that are used for "electric utility, telecommunications tree care," and forestry services, among others. ECF 2, ¶¶ 78, 79. According to plaintiffs, Altec is registered in Maryland as "a foreign corporation" and "maintains at least one office" in Maryland. *Id.* ¶ 2.

---

[4]According to plaintiffs, All Railroad and All Reliable "share owners, officers, directors, a board…and/or shareholders in common but are separate and distinct entities." ECF 2, ¶ 72. Other than All Railroad's relationship to All Reliable, it is not clear how it is involved in plaintiffs' claims.

Plaintiffs allege that about three days prior to the accident, All Reliable acquired a utility truck from Altec. *Id.* ¶ 100. The truck was equipped with a chassis and truck cab "from" Navistar. *Id.*

According to Rick Van Laar, a "Product Integrity and Compliance Manager," Altec ordered a cab and chassis from Navistar on April 27, 2019. ECF 9-6, ¶ 3. The cab and chassis were assembled at Navistar's plant in Springfield, Ohio on September 19, 2018. *Id.* ¶ 6. On September 29, 2018, the cab and chassis were shipped from Ohio to an "independent dealership" in North Carolina. *Id.* ¶ 8. Altec used the chassis and cab to manufacture a complete utility truck that it sold to All Reliable. *Id.* ¶ 9. Thereafter, All Reliable customized the truck for its own use. ECF 2, ¶ 93.[5] Further, Van Laar states that the "cab and chassis had no contact with the State of Maryland. It was not designed, manufactured, assembled, or sold, in Maryland." ECF 9-6, ¶ 10.

On July 12, 2019, All Reliable assigned the "brand-new subject truck" acquired from Altec to Mr. Rivera "for use in connection with his duties." ECF 2, ¶ 113. Plaintiffs contend that Mr. Rivera was the first All Reliable employee to operate the truck. *Id.* ¶ 114.

On July 15, 2019, All Reliable instructed Mr. Rivera to report to a road in West Virginia with the truck "to clear vegetation and cut and trim trees and tree limbs" that had grown around electric power lines and poles. *Id.* ¶ 117. At the job site, Mr. Rivera was ascending in the truck's bucket in order to cut a tree when the truck began to lift off the ground. *Id.* ¶ 123. When Mr. Rivera tried to lower the bucket, the entire truck tipped over and crashed to the ground, with plaintiff still inside of it. *Id.* ¶ 124. Plaintiff fell approximately 50 feet and "suffered, among other things, burst fractures of his neck, multiple fractures of his upper thigh, fractured ribs, pain and suffering, lost consciousness, and now one leg is shorter than the other." *Id.* ¶ 125.

---

[5] Plaintiffs do not allege where the truck was completed by Altec or customized by All Reliable. *See* ECF 2, ¶¶ 100-110.

After the accident, Altec "issued at least two official recalls of certain of its bucket trucks." *Id.* ¶ 127. It also "halted further use of the subject truck." *Id.*

## II. The Surreply Motion

Local Rule 105.2(a) provides that a party is not permitted to file a surreply without permission of the court. Although the filing of a surreply "is within the Court's discretion, *see* Local Rule 105.2(a), . . . they are generally disfavored." *EEOC v. Freeman*, 961 F. Supp. 2d 783, 801 (D. Md. 2013), *aff'd in part*, 778 F.3d 463 (4th Cir. 2015); *see also, e.g., Chubb & Son v. C & C Complete Servs., LLC*, 919 F. Supp. 2d 666, 679 (D. Md. 2013). However, a surreply may be permitted when the party seeking to file the surreply "would be unable to contest matters presented to the court for the first time" in the opposing party's reply. *Clear Channel Outdoor, Inc. v. Mayor & City Council of Baltimore*, 22 F. Supp. 3d 519, 529 (D. Md. 2014) (quotations and citations omitted). Conversely, a surreply is generally not permitted where the reply is merely responsive to an issue raised in the opposition. *See Khoury v. Meserve*, 268 F. Supp. 2d 600, 605-06 (D. Md. 2003).

Plaintiffs state: "Some of the assertions made by Navistar were made for the first time in its Reply." ECF 30 at 1-2. But, plaintiffs have not identified any substantive assertions that Navistar raised for the first time in its Reply. Nevertheless, plaintiffs argue that they are justified in filing a surreply because "Navistar incorrectly stated that there were no facts upon which to base the allegations made in the Complaint or in Plaintiffs' Response regarding Navistar's connections to the State of Maryland or to its involvement in the events that led to Plaintiff Rivera's catastrophic injuries." *Id.* at 1.

There is no merit to the claim that Navistar presented a new argument in its Reply. Navistar presented all of its substantive arguments regarding personal jurisdiction in its opening

brief.  Navistar's observation in its Reply that plaintiffs' Opposition "relies upon facts that are neither alleged in the Complaint, nor supported by affidavits," does not rise to the level of a new argument that warrants the filing of a surreply.  Rather, plaintiffs' surreply primarily appears to be an expansion of the arguments that they originally raised in their Opposition.

Accordingly, I shall deny plaintiffs' Surreply Motion.

### III. The Rule 12(b)(2) Motion

### A.

Navistar moves to dismiss plaintiffs' claims for lack of personal jurisdiction, predicated on Fed. R. Civ. P. 12(b)(2).  ECF 9.  "[A] Rule 12(b)(2) challenge raises an issue for the court to resolve, generally as a preliminary matter."  *Grayson v. Anderson*, 816 F.3d 262, 267 (4th Cir. 2016).  Under Rule 12(b)(2), a defendant "must affirmatively raise a personal jurisdiction challenge, but the plaintiff bears the burden of demonstrating personal jurisdiction at every stage following such a challenge."  *Id.*; *see UMG Recordings, Inc. v. Kurbanov*, 963 F.3d 344, 350 (4th Cir. 2020).  And, the burden is "on the plaintiff ultimately to prove the existence of a ground for jurisdiction by a preponderance of the evidence."  *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989); *see Grayson*, 816 F.3d at 267.

When "the existence of jurisdiction turns on disputed factual questions the court may resolve the [jurisdictional] challenge on the basis of a separate evidentiary hearing, or may defer ruling pending receipt at trial of evidence relevant to the jurisdictional question."  *Combs*, 886 F.2d at 676.  In its discretion, a court may permit discovery as to the jurisdictional issue.  *See Mylan Labs., Inc. v. Akzo, N.V.*, 2 F.3d 56, 64 (4th Cir. 1993).  However, neither discovery nor an evidentiary hearing is required in order for the court to resolve a motion under Rule 12(b)(2).

*See generally* 4A WRIGHT & A. MILLER, FEDERAL PRACTICE & PROCEDURE § 1351 (4d ed. 2019).

"The plaintiff's burden in establishing jurisdiction varies according to the posture of a case and the evidence that has been presented to the court." *Grayson*, 816 F.3d at 268. "When personal jurisdiction is addressed under Rule 12(b)(2) without an evidentiary hearing, the party asserting jurisdiction has the burden of establishing a *prima facie* case of jurisdiction." *Hawkins v. i-TV Digitalis Tavkozlesi zrt.*, 935 F.3d 211, 226 (4th Cir. 2019); *see Grayson*, 816 F.3d at 268. In that circumstance, "the district court must determine whether the facts proffered by the party asserting jurisdiction—assuming they are true—make out a case of personal jurisdiction over the party challenging jurisdiction." *Hawkins*, 935 F.3d at 226; *accord Sneha Media & Entm't, LLC. v. Assoc. Broad. Co. P Ltd.*, 911 F.3d 192, 196 (4th Cir. 2018); *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 396 (4th Cir. 2003). However, "[u]nlike under Rule 12(b)(6), the court may also consider affidavits submitted by both parties, although it must resolve all factual disputes and draw all reasonable inferences in favor of the party asserting jurisdiction." *Hawkins*, 935 F.3d at 226; *see UMG Recordings, Inc.*, 2020 WL 3476993, at *3; *Grayson*, 816 F.3d at 268; *Consulting Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d 273, 276 (4th Cir. 2009); *Mylan Labs.*, 2 F.3d at 62.

Plaintiffs maintain that they have established specific jurisdiction. But, if the Court disagrees, they suggest that the Navistar Motion is premature. ECF 22 at 10. And, they ask the Court, in the alternative, to reserve judgment on the issue of jurisdiction pending completion of discovery pertaining to jurisdiction. *Id.*

**B.**

Navistar argues that plaintiffs "have failed to meet their burden of proving a basis for personal jurisdiction" over Navistar in Maryland. ECF 9-3 at 8. According to Navistar, it is not subject to general jurisdiction in Maryland because it is not incorporated here, does not have its principal place of business, and has no contacts in Maryland on which general jurisdiction could be based. *Id.* Moreover, Navistar asserts that there is no basis for specific jurisdiction in Maryland "because it did not make, sell or distribute the International-brand cab and chassis which was part of the utility truck that Mr. Rivera was using while he was performing utility line clearing work in [West Virginia], nor did Navistar perform any warranty work on this cab and chassis as such, or as a fully completed vehicle." *Id.*

Navistar has submitted the affidavit of three Navistar employees. ECF 9-4 to ECF 9-6. The Court may consider them to resolve the jurisdictional question. *Hawkins*, 935 F.3d at 226.

Plaintiffs do not dispute Navistar's position as to general jurisdiction. *See generally* ECF 22. But, they contend that the Court has specific jurisdiction over Navistar because Navistar has "transacted business…in Maryland; and/or regularly does or solicits business, and or/derives substantial revenue from goods, services, or manufactured products used or consumed in Maryland; and have caused Plaintiffs [sic] tortious injury." *Id.* at 11. In this regard, they argue that Navistar purposely availed itself of Maryland's market. *Id.* at 12. And, they argue that Mr. Rivera's injuries are related to defendant's business. *Id.* at 18.

Fed. R. Civ. P. 4(k)(1)(A) authorizes a federal district court to exercise personal jurisdiction over a defendant in accordance with the law of the state where the district court is located. *Carefirst of Md.*, 334 F.3d at 396. It is well settled that, "to assert personal jurisdiction over a nonresident defendant, two conditions must be satisfied: (1) the exercise of jurisdiction

must be authorized under the state's long-arm statute; and (2) the exercise of jurisdiction must comport with the due process requirements of the Fourteenth Amendment." *Id.*; *see Clarke Veneers & Plywood, Inc. v. Mentakab Veneer & Plywood, SDN BHD*, 821 F. App'x 243, 244 (4th Cir. 2020).

Maryland's long-arm statute is codified at Md. Code (2013 Repl. Vol.), § 6-103(b) of the Courts & Judicial Proceedings Article ("C.J."). It authorizes "personal jurisdiction over a person, who directly or by an agent," *id.*:

(1) Transacts any business or performs any character of work or service in the State;

(2) Contracts to supply goods, food, services, or manufactured products in the State;

(3) Causes tortious injury in the State by an act or omission in the State;

(4) Causes tortious injury in the State or outside of the State by an act or omission outside the State if he regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from goods, food, services, or manufactured products used or consumed in the State;

(5) Has an interest in, uses, or possesses real property in the State; or

(6) Contracts to insure or act as surety for, or on, any person, property, risk, contract, obligation, or agreement located, executed, or to be performed within the State at the time the contract is made, unless the parties otherwise provide in writing.

Maryland's courts have "consistently held that the purview of [Maryland's] long arm statute is coextensive with the limits of personal jurisdiction set by the due process clause of the Federal Constitution." *Beyond Systems, Inc. v. Realtime Gaming Holding Co.*, 388 Md. 1, 15, 878 A.2d 567, 576 (2005) (citing *Mohamed v. Michael*, 279 Md. 653, 657, 370 A.2d 551, 553 (1977)); *see CSR, Ltd. v. Taylor*, 411 Md. 457, 472, 983 A.2d 492, 501 (2009) (stating that the long-arm statute authorizes the exercise of personal jurisdiction "'to the full extent allowable

under the Due Process Clause'" (citation omitted)); *Bond v. Messerman*, 391 Md. 706, 721, 895 A.2d 990, 999 (2006); *Pinner v. Pinner*, 240 Md. App. 90, 104, 201 A.3d 26, 34 (2019).

Although the long-arm and constitutional due process requirements are distinct, they can be evaluated in tandem. *See Beyond Sys*, 388 Md. at 15, 878 A.2d at 576 ("[O]ur statutory inquiry merges with our constitutional examination."); *accord Stover v. O'Connell Assocs., Inc.*, 84 F.3d 132, 135-36 (4th Cir. 1996) ("Because the limits of Maryland's statutory authorization for the exercise of personal jurisdiction are coterminous with the limits of the Due Process Clause, the statutory inquiry necessarily merges with the constitutional inquiry, and the two inquiries essentially become one."). Therefore, I shall consider whether the exercise of personal jurisdiction over defendant comports with due process.

The Supreme Court has long held that personal jurisdiction over a nonresident defendant is constitutionally permissible so long as the defendant has "minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (citation omitted); *see Ford Motor Company v. Montana Eighth Judicial District Court*, __ U.S. __, 141 S.Ct. 1017, 1024 (2021) (concluding, in product liability cases, that a state has personal jurisdiction over a company where the vehicular accident occurred in that state and the defendant did substantial business in that state). The "constitutional touchstone" of personal jurisdiction is that "'the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there.'" *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)).

Courts have separated the analysis into individual "prongs." *ALS Scan, Inc. v. Digital Serv. Consultants*, *Inc.*, 293 F.3d 707, 712 (4th Cir. 2002). They first ascertain whether the

threshold of "minimum contacts" is met, and they then consider whether the exercise of jurisdiction on the basis of those contacts is "constitutionally reasonable." *Id.*

Due process jurisprudence "recognize[s] two types of personal jurisdiction: 'general' (sometimes called 'all-purpose') jurisdiction and 'specific' (sometimes called 'case-linked') jurisdiction." *Bristol-Myers Squibb Co. v. Super. Ct. of Cal.*, ___ U.S. ___, 137 S. Ct. 1773, 1780 (2017) ("*Bristol-Myers*") (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). "A court with general jurisdiction may hear *any* claim against that defendant, even if all the incidents underlying the claim occurred in a different State." *Bristol-Myers,* 137 S. Ct. at 1780 (emphasis in original) (citing *Goodyear*, 564 U.S. at 919). However, in *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014), the Supreme Court made clear that "only a limited set of affiliations with a forum will render a defendant amenable to all-purpose jurisdiction there." In particular, as to "'an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile; for a corporation, it is an equivalent place, one in which the corporation is fairly regarded as at home.'" *Id.* (quoting *Goodyear*, 564 U.S. at 924).

Notably, "broad constructions of general jurisdiction" are "generally disfavored." *Nichols v. G.D. Searle & Co.*, 991 F.2d 1195, 1200 (4th Cir. 1993). The Supreme Court has said: "[T]he inquiry ... is not whether a foreign corporation's in-forum contacts can be said to be in some sense 'continuous and systematic,' it is whether that corporation's 'affiliations with the State are so "continuous and systematic" as to render [it] essentially at home in the forum State.'" *Daimler*, 571 U.S. at 138-39 (quoting *Goodyear*, 564 U.S. at 919) (alteration in original).

As indicated, for a corporation, "the place of incorporation and principal place of business are 'paradig[m] ... bases for general jurisdiction.'" *Daimler*, 571 U.S. at 137 (bracket in *Daimler*) (citation omitted). Although the *Daimler* Court acknowledged that the principal place

of business and place of incorporation are not the only places in which a corporation may be considered "at home," it emphasized that "[t]hose affiliations have the virtue of being unique— that is, each ordinarily indicates only one place," and it declined to extend general personal jurisdiction based on activities that would render the corporation subject to adjudication in "every other State in which [the corporation's] sales are sizable." *Id.* at 137-39.

The Supreme Court's decision in *BNSF Ry. Co. v. Tyrrell*, __ U.S. __, 137 S.Ct. 1549 (2017), is informative. There, the plaintiffs sued a railroad in a Montana state court for injuries sustained outside of Montana, and the railroad moved to dismiss the case for lack of personal jurisdiction. *Id.* at 1553-54. The Court invoked *Goodyear*, 564 U.S. 915, and *Daimler*, 571 U.S. 117, in concluding that the Montana state court did not have personal jurisdiction over the railroad, despite the fact that the railroad operated over 2,000 miles of in-state track and had over 2,000 in-state employees. *BNSF Ry. Co.*, 137 S.Ct. at 1559. "In-state business," it concluded, "does not suffice to permit the assertion of general jurisdiction over claims like [those of the plaintiffs] that are unrelated to any activity occurring in Montana." *Id.* at 1559; *see also Fidrych v. Marriott Int'l, Inc.*, 952 F.3d 124, 138 (4th Cir. 2020) (concluding that the act of obtaining a business license in a state does not create general jurisdiction).

Specific jurisdiction, on the other hand, exists where the "the suit arise[s] out of or relate[s] to the defendant's contacts with the forum.'" *Daimler*, 571 U.S. at 127 (citation omitted) (alterations in original). The Supreme Court recently reiterated: "The contacts needed for this kind of jurisdiction often go by the name 'purposeful availment.'" *Ford Motor Co.*, 141 S. Ct. at 1024 (citation omitted); *see Burger King*, 471 U.S. at 472–73 (Specific jurisdiction may be established over a defendant who "has 'purposefully directed' his activities at residents of the forum and the litigation results from alleged injuries that 'arise out of or relate to' those

activities.") (citation omitted) (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984)). "In other words, there must be 'an affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation.'" *Bristol-Myers*, 137 S. Ct. at 1780 (alterations in original) (quoting *Goodyear*, 564 U.S. at 919).

Moreover, the "contacts must be the defendant's own choice and not 'random, isolated, or fortuitous.'" *Ford Motor Co.*, 141 S. Ct. at 1025 (citation omitted). In other words, the contacts must "show that the defendant deliberately 'reached out beyond' its home – by, for example, 'exploi[ting] a market' in the forum State or entering a contractual relationship centered there." *Id.* (citations omitted; alterations in *Ford Motor Co.*); *see Walden v. Fiore*, 571 U.S. 277, 285 (2014). And, as noted earlier, "the defendant's conduct and connection with the forum State [must be] such that he should reasonably anticipate being haled into court there." *Woodson*, 444 U.S. at 297.

"For this reason, 'specific jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction.'" *Bristol-Myers*, 137 S. Ct. at 1780 (quoting *Goodyear*, 564 U.S. at 919); *see Ford Motor Co.*, 141 S. Ct. at 1025. However, in *Ford Motor Co.*, 141 S. Ct. at 1026, the Supreme Court rejected a "causation-only approach . . . ." Notably, specific personal jurisdiction may be established without "a causal showing," so long as there is a "strong 'relationship among the defendant, the forum, and the litigation' . . . ." *Id.* at 1028.

The Fourth Circuit has formulated a three-part test for use in determining whether there is specific jurisdiction over a defendant. The three prongs are: "'(1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the State; (2)

whether the plaintiffs' claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable.'" *Consulting Eng'rs*, 561 F.3d at 278 (quoting *ALS Scan*, 293 F.3d at 712); *accord Sneha Media & Entm't*, 911 F.3d at 198; *Perdue Foods, LLC v. BRF, S.A.*, 814 F.3d 185, 188 (4th Cir. 2016); *Carefirst*, 334 F.3d at 397. And, specific jurisdiction is assessed on a claim-by-claim basis. *See Pan-Am. Prod. & Holdings, LLC v. R.T.G. Furniture Corp.*, 825 F. Supp. 2d 664, 678 (M.D.N.C. 2011) ("When specific jurisdiction is asserted, jurisdiction must be established for each claim alleged."); *Gatekeeper, Inc. v. Stratech Sys., Ltd.*, 718 F. Supp. 2d 664, 666-68 (E.D. Va. 2010) (discussing the doctrinal basis for this rule); WRIGHT & MILLER, § 1069.7 ("[A] plaintiff also must secure personal jurisdiction over a defendant with respect to each claim she asserts.").

## C.

For plaintiffs to establish general jurisdiction over Navistar, they must show that Navistar's contacts with Maryland are so substantial as to render it "at home" in this State. *See Goodyear*, 564 U.S. at 919. It is undisputed that Navistar is neither incorporated nor headquartered in Maryland. Navistar is a Delaware corporation with its principal place of business in Illinois. ECF 9-4, ¶ 3. Understandably, plaintiffs do not rely on general jurisdiction.

According to the Covington Affidavit, Navistar is registered to do business in Maryland, has a resident agent for service of process in Maryland, and a number of independent dealerships sell Navistar products in Maryland. *Id.* ¶¶ 4, 5. And, the Complaint alleges that Navistar manufactures truck parts for sale and distribution in Maryland "and other states." ECF 2, ¶ 87. Although Navistar has contacts with Maryland, they are not so substantial as to "render [Navistar] essentially at home" in this State. *Goodyear*, 564 U.S. at 919; *see Daimler*, 571 U.S. at 139 n.20 ("[T]he general jurisdiction inquiry does not focus solely on the magnitude of the

defendant's in-state contacts…. General jurisdiction instead calls for an appraisal of a corporation's activities in their entirety, nationwide and worldwide.").

Indeed, if the Court were to exercise general jurisdiction over Navistar based on the facts presented here, then it would likely be subject to general jurisdiction in all 50 states. And, the "*Daimler* Court rejected the [] assertion that general jurisdiction could be exercised 'in every State in which a corporation engages in a substantial, continuous, and systematic course of business.'" *Fidrych*, 952 F.3d at 133 (quoting *Daimler*, 571 U.S. at 138 ("A corporation that operates in many places can scarcely be deemed at home in all of them.")).

The Court in *BNSF Ry. Co.*, 137 S. Ct. 1549, emphasized that a corporation is "at home" only in its "place of incorporation and its principal place of business," unless there is an "exceptional case" that "render[s] the corporation at home" elsewhere. *Id.* at 1558 (internal quotations omitted). An "exceptional case," it explained, would be one such as *Perkins v. Benguet Consol. Min. Co.*, 342 U.S. 437 (1952), in which "war had forced the defendant corporation's owner to temporarily relocate the enterprise from the Philippines to Ohio," such that "Ohio then became 'the center of the corporation's wartime activities.'" *BNSF Ry. Co.*, 137 S.Ct. at 1558 (construing *Perkins*, 342 U.S. 437) (quoting *Daimler,* 571 U.S. at 130 n.8).

In *Perkins*, general personal jurisdiction was found in Ohio because the company's president moved to Ohio, conducted all decision making, management, and correspondence from his office in Ohio, and fully "discharged his duties as president and general manager" in Ohio. *Perkins*, 342 U.S. at 448. In discussing *Perkins*, the Supreme Court highlighted in *Daimler* that "Ohio could be considered 'a surrogate for the place of incorporation or head office.'" *Daimler*, 571 U.S. at 130 n.8 (quoting Arthur T. von Mehren & Donald T. Trautman, Jurisdiction to Adjudicate: A Suggested Analysis, 79 HARV. L. REV. 1121, 1144 (1966)).

Plaintiffs' allegations as to Navistar do not come close to an "exceptional case." *BNSF Ry. Co.*, 137 S.Ct. at 1558 (internal quotations omitted). There "is nothing that would distinguish [Navistar's] relationship with [Maryland] from its relationship with any of the other states where it does business but where it is not incorporated or headquartered[.]" *Fidrych*, 952 F.3d at 134. Accordingly, because Navistar's contacts do not rise to the level of rendering it at home in Maryland, the requirements for the exercise of general jurisdiction are not satisfied in this case with respect to plaintiffs' claims.

Therefore, I turn to the issue of specific jurisdiction.

## D.

Navistar argues that plaintiffs do not allege facts sufficient to show specific jurisdiction as to plaintiffs' claims. In Navistar's view, the Complaint fails to allege any facts "as to Navistar that demonstrate a connection between [plaintiffs'] claims and Maryland." ECF 9-3 at 14. I agree.

As noted, to exercise specific jurisdiction over Navistar, the company must have engaged in "'some act by which [it] purposefully avails itself of the privilege of conducting activities within the forum State.'" *Ford Motor Co.*, 141 S.Ct. at 1024 (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)). "Yet even then -- because the defendant is not 'at home' -- the forum State may exercise jurisdiction in only certain cases. *The plaintiff's claims...must arise out of or relate to the defendant's contacts with the forum. Or put just a bit differently, there must be an affiliation between the forum and the underlying controversy*, principally, an activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." *Ford Motor Co.*, 141 S.Ct. at 1024-25 (citations and punctuation omitted) (emphasis added).

In their Opposition to the Navistar Motion, plaintiffs argue that Navistar purposefully availed itself of the Maryland marketplace because it conducts substantial business in Maryland and seeks to put its products into the market in Maryland. ECF 22 at 13-14. However, plaintiffs must demonstrate that there is "an affiliation between the forum and the underlying controversy." *Ford Motor Co.,* 141 S.Ct. at 1024.

Significantly, plaintiffs have not alleged any facts in the Complaint that demonstrate a connection between their claims and Navistar's contacts in Maryland. For example, nowhere in the Complaint do plaintiffs allege that the subject chassis was designed, assembled, or manufactured in Maryland, sold in Maryland, or even travelled through Maryland. *See* ECF 9-6, ¶ 10. And, it is undisputed that the chassis was used in West Virginia, where the accident occurred.

*Ford Motor Co.*, 141 S.Ct. 1017, involved two cases arising from vehicular accidents in Montana and Minnesota. Ford Motor Company did substantial business in both states. Nevertheless, it contended that specific jurisdiction was improper because the particular vehicles involved in the accidents had been purchased, manufactured, and designed out of state. *Id.* at 1022. The Supreme Court rejected this argument, finding specific jurisdiction exists when a company "serves a market for a product in the forum State and the product malfunctions there." *Id.* at 1027. In so holding, the Court noted that Ford Motor Company urged individuals in Montana and Minnesota to buy its motor vehicle products through advertisements; the vehicles were available for sale in those states; and the dealers regularly maintained and repaired the company's motor vehicles. *Id.* Accordingly, the defendant had purposefully availed itself of the privilege of conducting business in Montana and Minnesota. *Id.*

Of particular relevance here, the Court also focused on the fact that the plaintiffs' claims were related to Ford Motor Company's contacts in those states; "Ford had systematically served a market in Montana and Minnesota for the very vehicles that the plaintiffs allege[d] malfunctioned *and injured them in those States*." *Id.* at 1028 (emphasis added). In that circumstance, it was of no legal significance that the vehicles were purchased elsewhere.

Here, viewing the facts in the light most favorable to plaintiffs, Navistar purposefully availed itself of doing business in Maryland; it sells or distributes "truck and engine service parts," like those at issue in this case, to "customers throughout the state of Maryland." ECF 2, ¶ 84; ECF 22 at 13-14. But, unlike in *Ford Motor Co.*, the product in this case did not malfunction and injure the plaintiff *in Maryland*. Rather, the chassis was used in West Virginia, where the injury occurred. In this way, the facts of this case are closer to *Bristol-Myers*, 137 S.Ct. 1773, than to *Ford Motor Co*.

In *Bristol-Myers*, the Court found jurisdiction improper in California because, even though the company conducted substantial business in the State, the plaintiffs were not residents of California and their injuries had not occurred in California. 137 S.Ct. at 1781. Thus, the Court concluded, the plaintiffs' cases had no tie to California. *Id.* ("What is needed—and what is missing here—is a connection between the forum and the specific claims at issue").

Plaintiffs also contend in their Opposition that jurisdiction can arise from the fact that Navistar sold the chassis to Altec, which is "a company with a primary base of operation in Frederick County, Maryland." ECF 22 at 9-10. In the Complaint, however, plaintiffs alleged that Altec is "organized pursuant to the laws of the State of Alabama" and has its "principal place of

business *outside* the State of Maryland." ECF 2, ¶ 1 (emphasis added).[6] Even if Altec did operate

out of Maryland, this would not be sufficient to haul Navistar into court here. The allegations as

to Altec apply to Altec.

Moreover, a sale of a chassis to a company that has a presence in Maryland is not the

same as the sale of a chassis in Maryland. In effect, plaintiffs claim that Navistar does business

with a company that does business in Maryland. That does not give rise to specific personal

jurisdiction.

Accordingly, as to Navistar, the Court lacks specific personal jurisdiction.

**E.**

As an alternative to granting Navistar's Motion, plaintiffs ask the Court to defer ruling so

as to permit plaintiffs to conduct jurisdictional discovery. ECF 22 at 10.

"Discovery under the Federal Rules of Civil Procedure is broad in scope and freely

permitted." *Mylan Labs.*, 2 F.3d at 64. However, district courts "'have broad discretion in [their]

resolution of discovery problems that arise in cases pending before [them].'" *Carefirst of Md.*,

334 F.3d at 402 (quoting *Mylan Labs.*, 2 F.3d at 64) (alterations in *Mylan Labs.*). In some cases,

where the record suggests some indicia of personal jurisdiction, limited jurisdictional discovery

may be warranted to ascertain more facts. *See, e.g., Combs*, 886 F.2d at 676–77 (defendants'

solicitations to investors in the forum state were sufficient to establish a prima facie case for

jurisdiction); *Androutsos v. Fairfax Hosp.*, 323 Md. 634, 649–50, 594 A.2d 574 (1991)

(defendant's advertisement directed at forum state was indicia of personal jurisdiction). But,

---

[6] Ordinarily, a party may not rewrite the Complaint by way of an opposition to a motion to dismiss. *See, e.g., Mylan Laboratories, Inc. v. Akzo, N.V.*, 770 F. Supp. 1053, 1068 (D. Md. 1991) (noting that "'it is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss'") (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101 (7th Cir. 1984)).

"[w]hen a plaintiff offers only speculation or conclusory assertions about contacts with a forum state, a court is within its discretion in denying jurisdictional discovery." *Carefirst of Md.*, 334 F.3d at 402–03 (citing *McLaughlin v. McPhail*, 707 F.2d 800, 806 (4th Cir. 1983) (concluding that district court did not abuse its discretion in denying jurisdictional discovery when, "[a]gainst the defendants' affidavits," plaintiff "offered nothing beyond his bare allegations that the defendants had had significant contacts with the [forum] state of Maryland")).

Indeed, the Fourth Circuit has said that, "where a plaintiff's claim of personal jurisdiction appears to be both attenuated and based on bare allegations in the face of specific denials made by defendants, the court need not permit even limited discovery confined to issues of personal jurisdiction should it conclude that such discovery will be a fishing expedition." *Carefirst of Md.*, 334 F.3d at 403 (citation omitted); *see Unspam Tech., Inc. v. Chernuk*, 716 F.3d 322, 330 n.1 (4th Cir. 2013) (suggesting that the court did not abuse its discretion in denying jurisdictional discovery based on conclusory allegations of personal jurisdiction); *ALS Scan*, 293 F.3d at 716 n.3 (upholding district court's refusal to allow plaintiff to engage in jurisdictional discovery where plaintiff's request was based on "conclusory assertions").

Plaintiffs' request to conduct jurisdictional discovery is curious in light of their concern about the statute of limitations in West Virginia. Indeed, the request is at odds with counsel's letter of June 15, 2021, asking the Court to provide an expedited decision with respect to Navistar's Motion. Plaintiffs seek a prompt ruling so that they will have an opportunity to pursue the action against Navistar in West Virginia before the statute of limitations expires there on July 15, 2021. ECF 33. If I were to allow for jurisdictional discovery, however, then plaintiffs would surely miss the deadline to file suit in West Virginia.

In any event, jurisdictional discovery is not warranted here. As discussed, plaintiffs have not set forth a prima facie case for personal jurisdiction. The record lacks any indicia that the subject chassis was designed, manufactured, produced, sold, or altered in Maryland. Moreover, the accident did not occur in Maryland.

Although this Court "must take all disputed facts and reasonable inferences in favor of the plaintiff," *Carefirst of Md.*, 334 F.3d at 396, it is "not required to look solely to the plaintiff's proof in drawing those inferences," *Mylan Labs.*, 2 F.3d at 62. In the face of Navistar's "specific denials" in its employees' affidavits, plaintiffs offer only "speculation" and "conclusory assertions" about Navistar's alleged activities in Maryland as it relates to this case. *Carefirst of Maryland*, 334 F.3d at 402; *see, e.g.*, ECF 9-4; ECF 9-6.

In sum, plaintiffs have not identified any potential facts that they might uncover in discovery that would aid the Court's analysis. Accordingly, I will deny plaintiffs' request for jurisdictional discovery.

## IV. CONCLUSION

For the foregoing reasons, I shall deny the Surreply Motion (ECF 30) and grant the Navistar Motion (ECF 9).

An Order follows, consistent with this Memorandum Opinion.


Date: July 2, 2021 _____/s/_____
                            Ellen Lipton Hollander
                            United States District Judge